IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 20, 2019 Session

IN RE M.M.[1]

**Appeal from the Juvenile Court for Hawkins County**
**No. HJ-14-0312          J. Todd Ross, Judge**

_____

**No. E2018-01515-COA-R3-JV**
_____

In this child-custody dispute, father filed a petition for legitimation and to establish a parenting plan. Father was subsequently determined to be the biological father of the minor child M.K. After mother took the child to excessive medical visits, made unsubstantiated claims that the child suffers from ailments and had her treated for the same, and accused father of physically and sexually abusing the child, the trial court ordered mother to undergo a mental-health evaluation. Mother was subsequently diagnosed with Factitious Disorder Imposed on Another, formerly known as Munchausen Syndrome by Proxy. After a bench trial, the court held that it is in the child's best interest for father to be designated the primary residential parent of M.K. Mother's parenting time was limited to eleven hours of supervised visitation a week. Mother appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J. and THOMAS R. FRIERSON, II, J., joined.

Douglas R. Beier, Morristown, Tennessee, for the appellant, W.M.

Michelle G. Green, Rogersville, Tennessee, Guardian ad Litem.

A. K., Johnson City, Tennessee, appellee, Pro Se.

_____

[1] On September 13, 2017, the trial court entered an order holding that it is in the child's best interest to have her surname changed to match father's surname. The child's present initials are therefore legally M.K. However, the style of the case, as it appears before this Court, still has the child's former surname, which resulted in the initials M.M. in the case style. We use the minor child's legal initials, i.e., M.K.

# OPINION

## I.

Mother and father first met in Oklahoma. Mother became pregnant with the parties' only child and subsequently moved to Tennessee to live with her mother. Father followed mother to Tennessee. Father is a military veteran. He suffers from physical ailments, PTSD, and Tourette's syndrome. He has a VA disability rating as a result of his conditions. Father is presently unemployed, but attends classes at East Tennessee State University and obtains income from his GI Bill and disability status.

On January 7, 2014, M.K. was born. On April 3, 2014, father filed an action to legitimate and establish a parenting plan. Mother initially denied paternity, however a DNA test confirmed that father was the biological father. Subsequently, a "Memo of Understanding" was attached to an "Agreed Order Establishing Paternity and Setting Temporary Visitation Schedule." Therein, father was granted temporary visitation with the child under mother's supervision.

On January 5, 2016, father filed a motion for a hearing due to mother's non-compliance with the temporary parenting plan. He also filed a complaint for contempt alleging that mother refused to allow father his two hours of parenting time and that she took the child out of state without notice. On January 11, 2016, the court entered an order dismissing the contempt complaint, ordered that father be permitted his parenting time, and ordered the parties to attend mediation. The subsequent mediation report indicates that the parties were unable to resolve their dispute.

On February 5, 2016, mother filed a motion demanding father undergo a mental evaluation, because father "has displayed disturbing behavior as well as made disturbing statements in [mother's] presence, as well as that of the child. [Mother] is extremely concerned for their child's safety and wellbeing while in [f]ather's care." At the bottom of the motion is handwritten by the court: "motion for mental evaluation denied. Both parents to undergo parental assessment and parenting classes."

On February 5, 2016 a hearing was held; on April 4, 2016, the court entered its order. The court suspended father's temporary visits until after the next court date and after the parental assessment has been completed. On April 4, 2016, the court also entered its order from the aforementioned subsequent court date, which occurred on March 4, 2016; therein, the court held that father is entitled to supervised visitation.

On May 25, 2016, father filed another motion and a proposed temporary parenting plan. Mediation was subsequently attended, and the parties agreed to a temporary parenting plan until May 2017. On December 19, 2016, an agreed order incorporating the mediation agreement was entered. On February 15, 2017, father filed a motion to suspend

the December 19, 2016 order and requested a permanent parenting plan due to mother's refusal to comply with the temporary parenting schedule. Father also filed a verified petition for criminal contempt alleging twenty-three counts.

Mother then filed a motion to suspend the visitation order. Therein, she again alleged that father has engaged in concerning conduct. She alleged that the minor child has a ketchup allergy, and father continues to feed the child whatever the child desires. Mother alleged father does not have a concern for the child's safety and that he continues to ignore M.K.'s alleged food allergies.[2] She further alleged that father has inappropriately touched the child's private parts. Mother stated that there is currently an open case with DCS, and that she is concerned for the child's well-being and safety. Mother also answered father's petition for criminal contempt.

On April 17, 2017, an order was entered following a March 10, 2017 hearing. The order modified father's visitation and granted him unsupervised parenting time. It held both father's petition for criminal contempt and mother's motion to suspend visitation in abeyance.

On June 2, 2017, mother filed a motion to suspend father's visitation alleging that father had left marks and bruises on M.K. She alleged that father gave the child food she is allergic to and that it caused the child to vomit. She further alleged that she had to take the child to the emergency room due to the child's crying and bruises on her body. She also included several comments intimating that father had sexually abused the child.

On June 2, 2017, the court appointed a Guardian ad Litem and ordered mother to submit to a mental-health evaluation. It was suspected that mother may suffer from Munchausen Syndrome by Proxy.[3] DCS was ordered to investigate. On July 26, 2017, a DCS case manager filed a report indicating that there was no suspicious bruising on the child at any of the interviews; it was recommended that father's parenting time with the child increase.

On July 28, 2017, father filed a second verified petition for criminal contempt. On September 13, 2017, the court entered an order granting father custody of the child, changing the child's surname to father's surname, and ordering mother to submit to a full

---

[2] Allergy testing performed on March 27, 2018 concluded that the child does not have food allergies.

[3] Munchausen Syndrome by Proxy is a synonym for what is now known as Factitious Disorder Imposed on Another. Its cardinal characteristic is the production or feigning of physical or psychological symptoms in another person, usually a child or adult under the care of the person with the disorder. *See*, https://my.clevelandclinic.org/health/diseases/9834-factitious-disorder-imposed-on-another-fdia. The diagnostic process to identify this disorder is known as a Munchausen evaluation. We will refer to the mental-health disorder by its modern nomenclature, i.e., Factitious Disorder Imposed on Another.

Munchausen evaluation from Dr. Diana McCoy, Ph.D., A.B.A.P., at mother's expense. Dr. McCoy is a clinical psychologist and board certified in assessment psychology. Mother's visitation was limited to only therapeutic visitation through a contracted supervising agency. Mother did not get the ordered evaluation for several months.

Following the forensic evaluation by Dr. McCoy, an order entered May 10, 2018 directed that Dr. McCoy's report was to be distributed to the parties. The detailed report concluded that mother suffers from Factitious Disorder Imposed on Another. On May 30, 2018, the court ordered that "[n]o one may disseminate (make public) any part of the report by Dr. McCoy. Dr. McCoy's report shall remain confidential to these court proceedings."

The Guardian ad Litem then filed a "Motion Seeking Approval of Funds for Expert Witness, and Forensic Evaluation of Case, Ex-parte Motion (Filed under Seal)." Therein the GAL alleged that Dr. McCoy's testimony as an expert witness was necessary to represent the child's best interests. On June 20, 2018 the court entered an order approving the request.

On July 27, 2018 a hearing was held to establish a permanent parenting plan. At the hearing, Dr. McCoy, the doctor who performed the evaluation of mother, got the trial time wrong and was not present when it was ready to begin. Mother's counsel, the GAL, and father (appearing *pro se*) discussed how best to proceed. Mother's counsel agreed to stipulate to the doctor's report, except for the conclusions made by the doctor regarding custody. The judge assured mother's counsel that he would not consider Dr. McCoy's conclusions as to custody, but only the information contained in the report regarding mother's mental-health diagnosis. Later in the hearing, mother's counsel began to dispute the report's findings and was prevented from doing so by the court in accordance with the prior stipulation.

On August 14, 2018, the court entered an order making its findings of fact, pursuant to Tenn. Code Ann. § 36-6-106. It also entered a permanent parenting plan placing primary custody of the child with father and limiting mother to supervised visitation. On August 21, 2018, mother filed her notice of appeal.

## II.

Mother raises the following issues:

> Whether the ex parte communications of the guardian ad litem with the court and the court's orders granting the ex parte motions violate mother's constitutional rights, due process, and fundamental fairness.

Whether the trial court abused its discretion in designating father as primary parental custodian and in restricting mother's parenting time to one day each weekend for eleven hours under supervision.

## III.

In this bench trial, our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan,* 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

The details of custody and visitation with children are peculiarly within the broad discretion of the trial judge. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *Id*. (citing *State v. Scott,* 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland,* 22 S.W.3d 266, 273 (Tenn. 2000)). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley,* 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Eldridge*, 42 S.W.3d at 85.

## IV.

### A.

As noted *infra*, mother was ordered to undergo a mental-health evaluation by Dr. McCoy at mother's expense; the resulting report states that mother suffers from Factitious Disorder Imposed on Another. An order entered by the court, on May 30, 2018, following a May 18, 2018 hearing, states, in pertinent part:

> The Father shall be given a copy of the Report filed by Dr. McCoy today.
>
> No one may disseminate (make public) any part of the report by Dr. McCoy. Dr. McCoy's report shall remain confidential to these court proceedings.
>
> [Mother's attorney] is ordered to notify the [GAL] no later than Friday, May 25, 2018, whether he will stipulate to the

report or instead require the live testimony of Dr. McCoy. Whichever party requires Dr. McCoy's testimony shall pay for Dr. McCoy. The Court may further allocate that expense for Dr. McCoy's testimony at the hearing.

On June 19, 2018, the Guardian ad Litem filed a motion seeking approval for funds for Dr. McCoy to testify as an expert witness and perform a forensic evaluation of the case. The GAL stated in the motion that "[m]other has declined to pay for the expert's testimony, travel[,] and trial preparation," however, mother's attorney "has expressed that he reserves the right to 'dispute, contradict and object to irrelevant and improper information and conclusions' contained in the report." Accordingly, the GAL sought approval from the court to obtain funds for Dr. McCoy to testify at the hearing.

The GAL's motion was filed pursuant to Tenn. Sup. Ct. R. 13 Sec. 4, which states, in pertinent part:

> Section 4. Payment of expenses incident to representation.
>
> (a)(1) Appointed counsel, experts, and investigators may be reimbursed for certain necessary expenses directly related to the representation of indigent parties.
>
> \* \* \*
>
> (b) Expenses not listed in section 4(a), including travel outside the state, will be reimbursed only if prior authorization is obtained from the court in which the representation is rendered and prior approval is obtained from the director.
>
> > (1) Authorization of expense shall be sought by motion to the court.
> >
> > (2) The motion shall include both an itemized statement of the estimated or anticipated costs and specific factual allegations demonstrating that the expenses are directly related to and necessary for the effective representation of the indigent party.

- 6 -

(3) The court shall enter an order that evidences the action taken on the motion. If the motion is granted, the order shall either recite the specific facts demonstrating that the expenses are directly related to and necessary for the effective representation of the indigent party or incorporate by reference and attach the defense motion that includes the specific facts demonstrating that finding.

(4) The order and any attachments shall be submitted to the director for prior approval before any expenses are incurred.

*     *     *

The GAL's motion included the relevant information mandated by the above quoted Rule. She also included an affidavit from Dr. McCoy wherein the doctor stated her credentials, identified herself as the individual who performed the evaluation on mother and produced a corresponding report with recommendations, and stated her anticipated costs for reviewing the file and testifying as an expert witness. On June 20, 2018, the court entered an order approving the requested funds holding that an expert witness' services are necessary for effective representation of the child.

On appeal, mother argues that the court's findings in its resulting order are "based on inadmissible and hearsay evidence, allegations and 'facts' not proven at trial." Mother complains that she was unaware of the motion and order "until the [t]echnical [r]ecord was filed in this Court." Mother alleges that this is cause for a new trial. We disagree.

The GAL engaged in the above prescribed procedure for the permissible purpose of obtaining funds for the expert witness. The court's May 30, 2018 order gave mother the opportunity to stipulate to the expert's findings. She refused and reserved the rights to dispute, object, and contradict the report's findings. She also declined to pay for the expert witness to appear at the hearing. Upon mother's refusal to stipulate to the report and expression of her intent, the GAL sought the court's approval for funds to have Dr. McCoy testify in defense of her report. The GAL's motion presented "specific factual allegations," as demanded by the Rule. The trial court entered an order "recit[ing] specific facts demonstrating that the expenses are directly related to and necessary" for

effective representation. Mother's allegation that the motion filed by the GAL to obtain the necessary funds somehow presented the court with "secret evidence" is unreasonable. As argued by the GAL on appeal, the motion was not substantive in nature and was instead an administrative filing to secure payment for the expert in order to ensure the effective representation of the minor child. The resulting order was necessary to effectuate the request. Additionally, any effort by the GAL to file the motion under seal was done in accordance with the court's May 30, 2018 order requiring that the report and information contained therein remain confidential.

Mother's argument that this process was "unethical and improper" and provided the court with "secret evidence" is without merit.

**B.**

Mother also argues on appeal that the GAL's post-judgment motion to certify the matter as extended and complex, pursuant to Tenn. Sup. Ct. R. 13 Sec. 2(e), violated mother's "constitutional rights, due process and fundamental fairness." The GAL's motion included specific factual allegations demonstrating that the case was complex and extended. The court entered an order that evinced the action taken on the motion, and recited specific facts supporting its finding. *See*, Tenn. Sup. Ct. R. 13 Sec. 2. Again, as argued by the GAL on appeal, the motion was not substantive in nature and was purely an administrative filing to secure payment.

The motion and resulting order proceeded in accordance with the relevant Rule. Mother's argument on this issue is also without merit.

**V.**

Mother next argues that the trial court abused its discretion in designating father as primary residential parent and in limiting mother's parental time to one eleven hour supervised period each week. She argues that the trial court

> [i]mproperly weighed, or failed to weigh the Tennessee Code Annotated section 36-6-106(a) factors in designating Father as primary residential parent. The Order shows the [c]ourt considered factors in making the custody and visitation determination, but the [c]ourt's factors 1-10 do not track the statutory factors of the current version of T.C.A. 36-6-106(a)…

Failure to apply the proper version of Tenn. Code Ann. § 36-6-106 in a child custody matter has been addressed by the Supreme Court.

In ***C.W.H. v. L.A.S.***, 538 S.W.3d 488, 497–98 (Tenn. 2017), the trial court had held that a material change in circumstance existed warranting modification of the parenting plan in order to designate father the primary residential parent. Mother appealed; this Court vacated and remanded. In reversing the trial court, this Court concluded that the juvenile court misapplied Tenn. Code Ann. § 36-6-106 by consulting the newer version of the statute, rather than its predecessor. The Supreme Court considered whether the prior version of the statute should have governed the juvenile court's analysis. In so doing, it stated that

> [g]enerally[,] statutes are presumed to operate prospectively and not retroactively. ***Woods v. TRW, Inc.***, 557 S.W.2d 274, 275 (Tenn. 1977); ***Cates v. T.I.M.E., DC, Inc.***, 513 S.W.2d 508, 510 (Tenn. 1974). An exception exists, however, for statutes which are remedial or procedural in nature. Such statutes apply retrospectively, not only to causes of action arising before such acts become law, but also to all suits pending when the legislation takes effect, unless the legislature indicates a contrary intention or immediate application would produce an unjust result. ***Saylors v. Riggsbee***, 544 S.W.2d 609, 610 (Tenn. 1976).

> ***Kee v. Shelter Ins.***, 852 S.W.2d 226, 228 (Tenn. 1993). "The usual test of the 'substantive' or 'procedural' character of a statute for this purpose is to determine whether or not application of the new or amended law would disturb a vested right or contractual obligation." ***Saylors***, 544 S.W.2d at 610 (citations omitted). This Court further stated that "procedure" is defined as:

> [T]he mode or proceeding by which a legal right is enforced, as distinguished from the law which gives or defines the right, and which by means of the proceeding, the court is to administer—the machinery, as distinguished from its product; ... including pleading, process, evidence, and practice.... Practice [is] the form ... for the enforcement of rights or the redress of wrongs, as distinguished from the substantive law which gives the right or denounces the wrong....

*Id.* (quoting ***Jones v. Garrett***, 192 Kan. 109, 386 P.2d 194, 198-99 (1963)) (alterations in original). The statute at issue in this case created no rights and imposed no liabilities. *See, e.g.*, ***Saylors***, 544 S.W.2d at 610. It merely governed the mechanism by which a trial court should conduct a best interest analysis. As such, the statute is procedural in nature, and the version in effect at the time of the juvenile court's 2015 order should have been applied.

***C.W.H. v. L.A.S.***, 538 S.W.3d 488, 497–98 (Tenn. 2017).

In the present matter, it is unclear which version of Tenn. Code Ann. § 36-6-106 the trial court used when making its child-custody determination, because the court's citation is incomplete and its listing of factors is, at times, unspecific. However, if the court erred by applying an incorrect version of the statute, we hold that its error is not outcome-determinative and therefore harmless, because the court sufficiently considered factors that are enumerated in the version in effect at the time of the court's order; the court enumerated sufficient factual findings to support a conclusion that its holding is in the best interest of the child. *See*, ***C.W.H. v. L.A.S.***, 538 S.W.3d at 498 (holding that the error was harmless because the 'conclusion would be the same under either version of the statute.')

In its order, the trial court specifically found that

> [b]oth parents have displayed love, affection, and emotional ties to the minor child.

> *     *     *

> …Father is better suited to provide the child with appropriate food, clothing, medical care, education, and other necessary care.

> …The child has lived in a stable, satisfactory environment, with the Father…

> *     *     *

- 10 -

The court finds by clear and convincing evidence that while in the care of the [m]other, the minor child suffered emotional and medical neglect related to the [m]other's diagnosis of Factitious Disorder by Proxy. To date, the [m]other has provided no evidence of treatment for said disorder and the [c]ourt therefore finds that the child remains in threat of harm [if] allowed to be with the [m]other in an unsupervised manner.

* * *

The court further determined that mother has "disrupt[ed] the relationship between the minor child and the [f]ather."

We hold that the evidence presented at trial does not preponderate against the trial court's factual findings and that the court did not abuse its discretion in designating father as primary residential parent and by limiting mother to supervised visitation eleven hours a week. Most notably, the evidence does not preponderate against the court's finding that mother's mental-health condition places the minor child in persistent danger. Accordingly, we affirm.

## VI.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, W.M. Case remanded for enforcement of the trial court's judgment and collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE